**Glendon WOLFE and Jane Ann Wolfe, Appellants–Plaintiffs,**

v.

**STORK RMS–PROTECON, INC., f/k/a Stork Protecon, Inc., Appellee–Defendant.**

No. 08A02–9703–CV–178.

Court of Appeals of Indiana.

July 29, 1997.

---

Richard L. Russell, Rebecca R. McCain, Russell, McIntyre, Hilligoss & Welke, Kokomo, for Appellants–Plaintiffs.

Richard R. McDowell, Hill, Fulwider, McDowell, Funk & Matthews, Indianapolis, Edmund J. Siegert, Cremer, Kopon, Shaughnessy & Spina, Chicago, IL, for Appellee–Defendant.

## OPINION

ROBERTSON, Judge.

Jane Ann and Glendon Wolfe [Wolfe] appeal the summary judgment entered in their negligence and product liability action against Stork RMS–Protecon, Inc [Stork] for the serious personal injuries suffered by Jane after her clothing became entangled in a turning bolt which protruded from a motor which drove a conveyer belt at the meat processing plant where she worked. Wolfe raises three issues, none of which constitute reversible error. We hold the following issue to be dispositive:

> whether Wolfe has established a genuine issue of material fact that her injuries were proximately caused by Stork.

We affirm.

## FACTS

The facts in the light most favorable to nonmovant Wolfe reveal that she worked for the Indiana Packers Corporation at a large pork processing plant. Of the approximately sixty meat processing conveyor systems installed in the plant, Defendant Stork had supplied two. Stork provided technical support for its systems including help with the installation of the systems and the training of the workers who would be using them.

The present case involves one of the systems provided by Stork, a ham deboning machine along with its related material handling equipment including a conveyor driven by a hydraulic motor. The deboning machine would press down on a ham and squeeze the meat off. The meat would then travel down the conveyor for further processing. Wolfe's job was to stand at the end of this conveyor and cut excess fat off the meat with a knife.

The conveyor and motor of the ham deboning system sold by Stork was supplied by Defendant AFECO. Originally, the motor had been mounted directly onto the shaft of the conveyor pulley. An opening on the motor slipped directly over the shaft on the conveyor such that no coupler was required.

However, sometime after the original installation, Indiana Packers requested that the motor be replaced. Stork instructed Indiana Packers to order a replacement motor directly from AFECO. The replacement motor was shipped directly to Indiana Packers from Defendant Oil Air or its supplier North American Hydraulics. Stork was not involved in any way with the manufacturing, ordering, sale, delivery, or installation of the new motor. Evidence does exist to show that Stork representatives had been present in the plant after the installation of the replacement motor but only in conjunction with the other meat processing system provided by Stork which was located in another area of the plant.

The replacement motor and the manner in which it was installed was substantially different than the original set-up. The replacement motor was not directly mounted onto the conveyor, but instead required the use of a coupler. The shaft of the motor and the coupler were connected by a bolt which turned as the motor turned—one revolution

every eight seconds. The coupler had several different sized bolts sticking out of it. One of these bolts which protruded from the coupler caught Wolfe's sleeve and pulled her into the machinery resulting in serious personal injuries to her arm and shoulder. The original set-up, as supplied by Stork, had no coupler; nor did it have any protruding, turning bolts.

In addition to suing Stork, Wolfe brought the present lawsuit against the Algona Food Equipment Company (AFECO's supplier), Oil Air Products, Inc. and its supplier, North American Hydraulics, Innovative Pork Concepts (majority owner of Indiana Packers), the Miller–Valentine Group (the general contractor for the meat processing plant), Shambaugh & Son, Inc. (the electrical and plumbing subcontractor), and Northhill Corporation (which assembled most of the production equipment in the plant). Stork is the only remaining defendant as the others have entered into settlements and have been dismissed from the lawsuit.

As noted above, Stork obtained summary judgment. Additional facts are supplied as necessary.

## DECISION

■ As stated in *Stevenson v. Hamilton Mutual Insurance Company*, 672 N.E.2d 467 (Ind.Ct.App.1996), *trans. denied:*

> In reviewing a motion for summary judgment, this court applies the same standard as the trial court. We must determine whether there is a genuine issue of material fact and whether the law has been correctly applied by the trial court. Summary judgment is appropriate only if no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Neither the trial court, nor the reviewing court, may look beyond the evidence specifically designated to the trial court. Once the movant for summary judgment has established that no genuine issue of material fact exists by submission of materials contemplated by T.R. 56, the nonmovant may not rest on his pleadings but must set forth specific facts, using supporting materials contemplated under the rule, which show the existence of a

genuine issue for trial. A trial court's grant of summary judgment is "clothed with a presumption of validity," and the appellant bears the burden of demonstrating that the trial court erred.

*Id.* at 470–71 (Citations omitted). When a defendant manufacturer in a negligence/products liability case moves for summary judgment, it has the burden to show the uncontroverted nonexistence of at least one of the elements essential to plaintiff's case. *Jarrell v. Monsanto Company*, 528 N.E.2d 1158, 1162 (Ind.Ct.App.1988), *trans. denied.* The reviewing court will affirm the grant of summary judgment on any legal basis supported by the designated evidentiary material. *Landmark Health Care Associates, L.P. v. Bradbury*, 671 N.E.2d 113, 116 (Ind.1996).

### I.

### *Trial Court's Order—Lack of Special Findings*

■ The trial court's summary judgment order reads "there are no genuine issues of material fact precluding the entry of summary judgment for [Stork]." Wolfe argues this general entry is insufficient to satisfy the requirement imposed by Ind.Trial Rule 56(C) that "the court shall designate the issues or claims upon which it finds no genuine issue as to any material facts." We disagree.

■ Under T.R. 56(C), the trial court must state the issues and claims upon which summary judgment is granted only where summary judgment is granted on less than all of the issues. *Breeck v. City of Madison*, 592 N.E.2d 700, 705 (Ind.Ct.App.1992), *trans. denied.* Otherwise, T.R. 56 imposes no requirement upon the trial court to specifically state the legal basis for granting summary judgment. *Id.*

The present case does not involve a partial summary judgment. The trial court entered summary judgment in favor of Stork on all issues. Therefore, the trial court was not required to specifically state the legal basis of its judgment, and we find no error.

## II.

### *Proximate Cause*

■ Wolfe asserts that there is a genuine issue of material fact precluding summary judgment regarding whether Stork was negligent in the performance of its technical support functions including the training of the workers and the warning of the dangers involved in using the deboning system. Wolfe also argues that there is a genuine issue of material fact regarding its product liability claim as to the adequacy of the warnings placed on the product and whether the installation of the new conveyor motor constituted a substantial change or alteration which relieved Stork of product liability. We disagree.

■ Proximate cause is an essential element of, and is determined in the same manner in, both negligence and product liability actions. *Montgomery Ward & Co. v. Gregg,* 554 N.E.2d 1145, 1156 (Ind.Ct.App. 1990), *trans. denied; Jarrell,* 528 N.E.2d at 1163, 1167. A negligent act or omission is the proximate cause of an injury if the injury is a natural and probable consequence which, in light of the circumstances, should reasonably have been foreseen or anticipated. *Havert v. Caldwell,* 452 N.E.2d 154, 158 (Ind. 1983); *Woods v. Qual–Craft Industries, Inc.,* 648 N.E.2d 1198, 1202 (Ind.Ct.App.1995), *trans. denied.* Proximate cause is established if the injury caused by the product is a natural and probable consequence which was, or should have been, reasonably foreseen or anticipated in light of the attendant circumstances. *Montgomery Ward,* 554 N.E.2d at 1156.

■ However, where harmful consequences are brought about by intervening and independent forces which were not reasonably foreseeable at the time of the defendant's conduct, the chain of causation is broken and the intervening cause may serve to cut off the defendant's liability. *Havert,* 452 N.E.2d at 158–59. In a products liability action, alteration of the product is relevant to the issue of proximate cause. *Leon v. Caterpillar Industries, Inc.,* 69 F.3d 1326, 1339 (7th Cir. 1995). An intervening cause will not operate to relieve a manufacturer of liability unless the intervening acts could not have been reasonably foreseen by the manufacturer; however, the unforeseeable intervening negligent acts of a third party may constitute a superseding cause which relieves the manufacturer of responsibility for the plaintiff's injuries. *Id.; Conder v. Hull Lift Truck, Inc.,* 435 N.E.2d 10, 14 (Ind.1982). Indiana Code 33–1–1.5–4(b)(3) reads:

> It is a defense that the cause of the physical harm is a modification or alteration of the product made by any person after its delivery to the initial user or consumer if such modification or alteration is the proximate cause of physical harm where such modification or alteration is not reasonably expectable to the seller.

■ Ordinarily, the issue of proximate cause is a question for the jury and is not properly resolved by summary judgment. *McKinney v. Public Service Company, Inc.,* 597 N.E.2d 1001, 1005–06 (Ind.Ct.App.1992), *trans. denied; Montgomery Ward,* 554 N.E.2d at 1156. However, where the injuries could not, as a matter of law, have been reasonably foreseeable due to the unforeseeability of an intervening, superseding cause, summary judgment may appropriately be entered in favor of the defendant. *Havert,* 452 N.E.2d at 159; *Woods,* 648 N.E.2d at 1202.

In the present case, Wolfe was injured when her smock became caught in a protruding, turning bolt which connected the coupler to the hydraulic motor. The original system provided by Stork had no coupler and no protruding bolts. Thus, the undisputed, designated evidence reveals that the dangerous instrumentality, the protruding, turning bolt, was introduced when the hydraulic motor was replaced. As noted above, there is no evidence of Stork's involvement in the replacement of the conveyor motor. Nor is there any evidence that Stork representatives had any knowledge of the modification of its deboning system.

We conclude, as a matter of law, that Stork could not have reasonably foreseen that its conveyor system, which had been designed and installed with a motor directly mounted onto the conveyor pulley, would have been substantially altered by the replacement of

the motor with one that used a coupler and had protruding, turning bolts coming out of it. Under these circumstances, we conclude, as a matter of law, that the replacement of the conveyor motor with the addition of the protruding, turning bolts, one of which directly caused Wolfe's injuries, constituted the sole proximate cause of Wolfe's injury which served to cut off any liability Stork may have had.[1] Stork has established the uncontroverted nonexistence of the element of proximate cause. Therefore, the trial court correctly entered summary judgment in Stork's favor and we find no error.

Judgment affirmed.

BAKER and CHEZEM, JJ., concur.

---

1. The present case is distinguishable from, and therefore does not conflict with, *L.K.I. Holdings, Inc. v. Tyner*, 658 N.E.2d 111 (Ind.Ct.App.1995), *trans. denied*, in which we held that the doctrine of intervening cause had been incorporated into our comparative fault system. *Id.* at 120. In the present case, Wolfe failed to establish that her injuries were proximately caused, even remotely, by Stork. As noted above, the replacement of the hydraulic motor with the protruding, turning bolts was the sole proximate cause of Wolfe's injuries.