

**FILED**

Jun 04 2020, 10:44 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANTS

Jay Lauer
South Bend, Indiana

ATTORNEY FOR APPELLEE –
FREDY SANCHEZ CORTES

Elizabeth A. Bellin
Elkhart, Indiana

ATTORNEY FOR APPELLEE –
STATE OF INDIANA

Frances Barrow
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In Re the Paternity of J.G.; | June 4, 2020 |
| Wendy Sonora Hernandez and Margarito Guzman, | Court of Appeals Case No. 19A-JP-2429 |
| *Appellants,* | Appeal from the Elkhart Superior Court |
| v. | The Honorable David C. Bonfiglio, Judge |
| Fredy Sanchez Cortes, | The Honorable James N. Fox, Commissioner |
| *Appellee,* | Trial Court Cause No. 20D06-1808-JP-262 |
| and | |
| State of Indiana, | |
| *Co-Appellee.* | |

**Najam, Judge.**

# Statement of the Case

During her marriage to Margarito Guzman ("Husband"), Wendy Sonora Hernandez ("Mother") gave birth to J.G. ("Child"). Nearly five years after Child's birth, the State filed a paternity action as Child's next friend in which the State sought to establish paternity in Fredy Sanchez Cortez ("Putative Father"). Mother moved to dismiss the State's petition, which motion the trial court converted to a motion for summary judgment. After a fact-finding hearing, the court denied Mother's motion and found Putative Father to be Child's biological father.

Mother and Husband appeal and raise three issues for our review, which we revise and restate as follows:

1. Whether the trial court erred when it dismissed Husband as a party to the proceeding after it had found Putative Father to be Child's biological father.

2. Whether the trial court denied Mother a reasonable opportunity to present materials relevant to her motion for summary judgment.

3. Whether the trial court erred when it concluded that the State's petition was properly filed even though it filed the petition more than two years after Child's birth and Putative Father had not registered with the putative father registry.

We affirm.

## Facts and Procedural History

[4] Mother and Husband were married in 2009. During their marriage, on September 18, 2013, Mother gave birth to Child. On August 2, 2018, the State, as Child's next friend, filed a petition to establish paternity. In that petition, the State asserted that Child was born to Mother out of wedlock and that Putative Father was Child's father.[1] Thereafter, Mother filed a motion to dismiss the State's petition on the ground that the State had failed to name Husband as a party, the State had not timely filed the petition within two years of Child's birth, and Putative Father had not registered with the putative father registry. The State then filed a motion to join Husband as a party, which motion the trial court granted. Shortly after Mother had filed her motion to dismiss, Putative Father registered with the putative father registry.

[5] On November 15, without having yet ruled on Mother's motion to dismiss, the court ordered the parties to submit to DNA tests. The results of those tests indicated that there is a greater than 99% chance that Putative Father is Child's biological father. The court then held a review hearing on January 9, 2019. At the hearing, Putative Father asserted that, based on the results of the DNA tests, he is Child's father. Mother reiterated her arguments that the State's petition should be dismissed as untimely and because Putative Father had not

---

[1] In its petition, the State indicated that it was filing at Mother's request. However, at the evidentiary hearing, Mother informed the court that Putative Father had asked the State to file the paternity petition. *See* Tr. Vol. II at 8.

registered with the putative father registry at the time the State had filed its petition. At the conclusion of the hearing, the court informed the parties that it would hold an evidentiary hearing in May, and the court directed the parties to file their witness and exhibit lists seven days prior to the hearing.

[6] Then, on May 17, the trial court held an evidentiary hearing on both the State's paternity petition and Mother's motion to dismiss.[2] During the hearing, Mother and Husband did not testify or present any evidence. Putative Father did not testify, but he presented as evidence a petition that Husband had filed to dissolve his marriage to Mother. In that petition, Husband stated that, while Child was born during his marriage to Mother, Child "is not a child of the marriage[.]" Appellee's App. Vol. II at 12. Putative Father also presented as evidence a verified motion for provisional orders filed by Husband in the dissolution proceeding in which Husband listed children other than Child as children of the marriage.

[7] On July 19, the court entered an order on Mother's motion to dismiss and the State's petition. In that order, the court noted that it was treating Mother's motion as a motion for summary judgment. The court then found that "precious little" evidence had been presented and that the parties had offered "absolutely no testimony." Appellants' App. Vol. II at 11. Accordingly, the

---

[2] The day prior to the evidentiary hearing, Mother filed a second motion to dismiss the State's paternity petition in which she reiterated the same arguments she had made in her first petition. However, the court struck that motion on the ground that it was "redundant and repetitive." Appellants' App. Vol. II at 14.

court found that Mother had "not met the burden of evidence to dismiss this action" and denied her motion for summary judgment. *Id*. The court then stated that it could not "overlook the fact that DNA establishes [Putative Father] as the father and disregard the filing where [Husband] denies being the father," and it found "by clear and convincing evidence" that Putative Father is the father of Child. *Id*. Thereafter, on August 2, Putative Father filed a motion to dismiss Husband as a party to the action, which motion the trial court granted the same day. This appeal ensued.

# Discussion and Decision

## *Issue One: Dismissal of Husband as Party*

[8] On appeal, Mother and Husband contend that the trial court abused its discretion when it granted Putative Father's motion to dismiss Husband from the proceeding. Specifically, Mother and Husband contend that the court "did not wait for the expiration of the thirty (30) day deadline for [Husband] to file a Notice of Appeal." Appellant's Br. at 21. However, we hold that Mother and Husband have failed to meet their burden on appeal to demonstrate that the court abused its discretion.

[9] It is well settled that the Indiana Appellate Rules require appellants to include in their brief an argument section that "contain[s] the contentions of the appellant[s] on the issues presented, supported by cogent reasoning. Each contention must be supported by citation to the authorities, statutes, and the Appendix or parts of the Record on appeal relied on[.]" Ind. Appellate Rule

46(A)(8)(a). Here, Mother and Husband have not provided any argument to explain why the court was required to wait until the thirty-day period in which they could file a notice of appeal had elapsed before it could rule on Putative Father's motion to dismiss Husband as a party to the proceeding. Further, Mother and Husband have not provided a single citation to legal authorities to support their assertion. As a result, Mother and Husband have not met their burden on appeal to demonstrate that the court abused its discretion when it dismissed Husband as a party.[3]

## Issue Two: Opportunity to Present Materials

[10]    Mother next contends that the trial court did not provide her with a reasonable opportunity to present relevant materials after converting her motion to dismiss to a motion for summary judgment.[4] Indiana Trial Rule 12(B) provides that, where a court treats a motion to dismiss as a motion for summary judgment, "all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."

---

[3] Further, we note that Husband disclaimed Child in his petition to dissolve his marriage to Mother. Indeed, Husband specifically stated that, while Child was born during his marriage to Mother, Child "is not a child of the marriage[.]" Appellee's App. Vol. II at 12. Thus, it appears that Husband is now attempting to maintain a different position than he took in the dissolution proceeding. However, judicial estoppel may prevent a party from asserting a position in a legal proceeding inconsistent with one previously asserted. *Turner v. Stuck*, 778 N.E.2d 429, 431 (Ind. Ct. App. 2002). Here, Mother and Husband have not provided any argument or explanation why Husband is not judicially estopped from claiming to the trial court that he is Child's father.

[4] The parties do not contend that the trial court erred when it treated Mother's motion as a motion for summary judgment.

[11] On appeal, Mother asserts that the court "did not provide either party with any notice, prior to the issuance of its decision[,]" that it intended to treat her motion to dismiss as a motion for summary judgment. Appellant's Br. at 20. Accordingly, Mother maintains that the court did not provide her with "a reasonable opportunity to present" relevant materials. *Id*.

[12] We acknowledge that the trial court did not inform the parties in advance that it intended to treat Mother's motion to dismiss as a motion for summary judgment. But it is well settled that a trial court's "failure to give explicit notice of its intended conversion of a motion to dismiss to one for summary judgment is reversible error only if a reasonable opportunity to respond is not afforded a party and the party is thereby prejudiced." *Azhar v. Town of Fishers*, 744 N.E.2d 947, 950 (Ind. Ct. App. 2001).

[13] Here, Mother simply asserts that, had the court given the parties notice of its intent to treat Mother's petition as one for summary judgment, she could have submitted "additional documents" to support her position or to refute the allegations or documents submitted by Putative Father. Appellants' Br. at 20. However, at the review hearing in January, the court notified the parties that it would hold an evidentiary hearing in May, and the court directed the parties to file their witness and exhibits lists. The court then held an evidentiary hearing on both the State's petition and Mother's motion at which Mother appeared. At that hearing, Mother had the opportunity to present any evidence that was relevant to either filing, but she did not offer any. Accordingly, Mother had several months' notice that the court would hear evidence and, as such, she has

not shown that she was prejudiced by the trial court's failure to provide her with explicit notice of its intent to treat her motion as one for summary judgment. We therefore cannot say that the court committed reversible error on this issue.

### *Issue Three:  Denial of Motion for Summary Judgment*

[14]   Finally, Mother contends that the trial court erred when it denied her motion for summary judgment.  Our standard of review for summary judgment appeals is well settled.  The Indiana Supreme Court has explained that

> [w]e review summary judgment de novo, applying the same standard as the trial court:  "Drawing all reasonable inferences in favor of . . . the non-moving parties, summary judgment is appropriate 'if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  *Williams v. Tharp*, 914 N.E.2d 756, 761 (Ind. 2009) (quoting T.R. 56(C)).  "A fact is 'material' if its resolution would affect the outcome of the case, and an issue is 'genuine' if a trier of fact is required to resolve the parties' differing accounts of the truth, or if the undisputed material facts support conflicting reasonable inferences."  *Id*. (internal citations omitted).

> The initial burden is on the summary-judgment movant to "demonstrate [ ] the absence of any genuine issue of fact as to a determinative issue," at which point the burden shifts to the non-movant to "come forward with contrary evidence" showing an issue for the trier of fact.  *Id*. at 761-62 (internal quotation marks and substitution omitted).  And "[a]lthough the non-moving party has the burden on appeal of persuading us that the grant of summary judgment was erroneous, we carefully assess the trial court's decision to ensure that he was not improperly denied his day in court."  *McSwane v. Bloomington Hosp. & Healthcare Sys*.,

916 N.E.2d 906, 909-10 (Ind. 2009) (internal quotation marks omitted).

*Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014) (omission and some alterations original to *Hughley*).

[15] Further, this appeal requires us to interpret statutes. As this Court has stated, "[t]he primary purpose of statutory interpretation is to ascertain and give effect to the intent of our legislature. The best evidence of legislative intent is the statutory language itself, and we strive to give the words in a statute their plain and ordinary meaning." *21st Amendment, Inc. v. Ind. Alcohol & Tobacco Comm'n*, 84 N.E.3d 691, 696 (Ind. Ct. App. 2017) (citations and quotation marks omitted).

[16] On appeal, Mother maintains that the court erred when it denied her motion for summary judgment because the State's petition was untimely and because Father had not registered with the putative father registry at the time the State filed its petition.[5] We address each argument in turn.

---

[5] Throughout her argument on this issue, Mother refers to the petition as "Putative Father's paternity petition." Appellants' Br. at 13. However, the State, not Putative Father, filed the paternity petition on behalf of Child. *See* Appellants' App. Vol. II at 17.

[17] Mother first contends that the trial court erred when it denied her motion for summary judgment because the State had not timely filed its paternity petition.[6] Specifically, Mother asserts that a paternity petition must be filed not later than two years after a child is born. And because the State did not file its petition until Child was almost five years old, Mother maintains that the State filed its petition outside the two-year statute of limitations.

[18] To support her assertion, Mother relies on Indiana Code Section 31-14-5-3(b) (2019), which provides that a "mother, a man alleging to be the child's father, or the [Indiana Department of Child Services] or its agents must file a paternity action not later than two (2) years after the child is born[.]" However, there are exceptions to that requirement. Indeed, Indiana Code Section 31-14-5-3(b)(3) provides that a paternity petition must be filed within two years of a child's birth *unless* "the mother, the department, or a prosecuting attorney operating under an agreement or contract described in I[ndiana] C[ode Section] 31-25-4-13.1 files a petition after the alleged father has acknowledged in writing that he is the child's biological father."

[19] Here, the prosecuting attorney filed the paternity petition. And there is no dispute that the prosecuting attorney was operating under an agreement

---

[6] Mother asserts that the trial court did not have jurisdiction to hear the petition because it was untimely. However, this Court has previously held that the "statute of limitations for paternity actions is not jurisdictional." *Nash v. Howell (In re Paternity of K.H.)*, 709 N.E.2d 1033, 1035 (Ind. Ct. App. 1999).

described in Indiana Code Section 31-25-4-13.1.[7] Accordingly, the State was not required to file its petition within two years of Child's birth and, as such, the State's petition was timely filed.

[20] Mother acknowledges that that exception allows a prosecuting attorney to file a paternity petition more than two years after a child's birth. However, Mother directs us to Indiana Code Section 31-14-4-1(7), which provides that a prosecuting attorney can only file a paternity petition "[i]f the paternity of a child has not been established[.]" Based on that statute, Mother asserts that, here, paternity was established for Child when Child was born during her marriage to Husband.

[21] In support of her position, Mother relies on Indiana Code Section 31-14-7-1(1). But that statute states that a man is "presumed to be" a child's father if the child is born while the man is married to the child's mother. That is, Mother has equated the term "presumed" as used in Indiana Code Section 31-14-7-1(1) with the term "established" as used in Indiana Code Section 31-14-4-1(7). But we "presume the legislature deliberately used a different term because it intended to communicate a different meaning." *In re Adoption of B.C.H.*, 22 N.E.3d 580, 585 (Ind. 2014). Had the legislature intended for paternity of a

---

[7] For the first time in her reply brief, Mother asserts that the State's paternity petition "did not comply" with Indiana Code Section 31-14-5-3(b)(3) because the petition did not state that Putative Father had acknowledged in writing that he is Child's biological father. Reply Br. at 9. While the statute requires a man to acknowledge in writing that he is a child's biological father before the prosecuting attorney can file a paternity petition, we see no requirement in that statute that the petition itself must include a statement that the alleged father had acknowledged in writing that he is the father. *See* I.C. § 31-14-5-3(b)(3).

child to be "established" simply because of a husband's marriage to the child's mother, it could have said so. But it did not. Rather, it explicitly provided that a husband's marriage only creates a rebuttable presumption of paternity. *See* I.C. § 31-14-7-1(1).

[22] Indeed, it is well settled that the fact that a child was born while his mother was married "does *not* establish that the child was born during wedlock." *K.S. v. R.S.*, 669 N.E.2d 399, 402 (Ind. 1996) (emphasis added). And our Supreme Court has observed that the presumption of fatherhood created by Indiana Code Section 31-14-7-1(1) "is not conclusive[.]" *Fairrow v. Fairrow*, 559 N.E.2d 597, 600 (Ind. 1990). On the contrary, that presumption of paternity "can be rebutted[.]" *T.M. v. L.D. (In re I.J.)*, 39 N.E.3d 1184, 1188 (Ind. Ct. App. 2015).

[23] Because the presumption of paternity that arises when a man is married to a child's mother is not conclusive and can be overcome, we hold that the paternity of a child has not been established simply by virtue of the marriage. Here, even though Husband was presumed to be Child's father, his paternity had not been established. And because the paternity of Child had not been established, the prosecuting attorney was authorized to file the paternity petition. *See* I.C. § 31-14-4-1(7)(B).

[24] In any event, while not discussed by Mother or Putative Father, we note that Indiana Code Section 31-14-5-2(a) provides that a person less than eighteen years of age "may file a petition if the person is competent except for the person's age. A person who is otherwise incompetent can file a petition

through the person's . . . next friend." And a child may file a paternity petition "at any time before the child reaches twenty (20) years of age." I.C. § 31-14-5-2(b). Here, the prosecuting attorney filed the petition on behalf of Child as Child's next friend.[8] Because the prosecuting attorney was filing on behalf of Child, he was authorized to file the petition at any time before Child turned twenty years old. As Child was less than five years old at the time the State filed its petition, the petition was timely. The trial court did not err when it denied Mother's motion for summary judgment on the ground that the State's petition was untimely.

### Registration with Putative Father Registry

[25] Mother also asserts that the trial court erred when it denied her motion for summary judgment because Putative Father had not registered with the putative father registry at the time the State filed its paternity petition, which she maintains Putative Father was required to do before the State could file the petition. To support her assertion, Mother relies on Indiana Code Section 31-14-5-7, which provides that a "man who files or is a party to a paternity action shall register with the putative father registry" under Indiana Code Chapter 31-19-5.

[26] Indiana Code Section 31-19-5-12 provides that, in order to be entitled to a notice of an adoption, a putative father must register with the putative father

---

[8] It is well settled that "prosecutors may bring paternity actions as next friends of children." *J.R.W. ex rel. Jemerson v. Watterson*, 877 N.E.2d 487, 491 (Ind. Ct. App. 2007).

registry not later than thirty days after the child's birth or the earlier of the date of the filing of a petition for the child's adoption or the termination of the parent-child relationship between the child and the child's mother. And Indiana Code Section 31-14-5-9 states that "[a] man who is barred under [Indiana Code Article] 31-19 from establishing paternity may not establish paternity by . . . requesting a prosecuting attorney to file a paternity action." Based on those statutes, Mother maintains that Putative Father was required to register with the putative father registry.

[27] To further support her assertion, Mother relies on *J.W. v. R.M. (In re G.W.)*, 983 N.E.2d 1193 (Ind. Ct. App. 2013). In that case, the child was subject to an adoption proceeding, and the putative father had not registered with the putative father registry. Rather, four days after the adoption petition was filed, the putative father asked the State to file a paternity petition. On appeal, this Court stated that

> the requirement that the putative father registers within a certain time limit[] is not solely mandated in adoption proceedings but carries its mirror consequences into the paternity proceedings. In particular, "[a] man who files or is a party to a paternity action shall register with the putative father registry under [Indiana Code Chapter] 31-19-5." I.C. § 31-14-5-7. Likewise, "a man who is barred under [Indiana Code Article] 31-19 from establishing paternity may not establish paternity by: (1) filing a paternity action as next friend of child; or (2) requesting a prosecuting attorney to file a paternity action." I.C. § 31-14-5-9.

*Id.* at 1197 (some alterations in original). As the putative father had not registered with the putative father registry, this Court held that he had impliedly consented to the child's adoption and that he was barred from establishing paternity. *Id.* at 1198.

[28] However, we agree with Putative Father and the State that Mother's reliance on that case and the putative father registry statutes is misplaced. The putative father registry statutes simply require a man who wishes to contest a child's adoption to timely register with the putative father registry. And the term "mirror consequences" as used in *In re G.W.* means only that, if a putative father fails to timely register, he cannot circumvent that registration requirement by filing a petition to establish paternity.

[29] Neither this Court's holding in *In re G.W.* nor the statutes cited by Mother require every putative father to register with the putative father registry before he can file a petition to establish paternity or ask a prosecutor to file as a child's next friend. Indeed, this Court specifically noted that the "statute governing the putative father's registry imposes registration requirements on putative fathers who wish to contest their child's adoption or those who petition for paternity while an adoption proceeding is pending." *Id.* at 1196-97. Thus, contrary to Mother's assertions, the requirement for a man to register with the putative father registry only applies when the child is subject to an adoption proceeding.

[30] Here, as Child was not subject to an adoption proceeding, Putative Father was not required to register with the putative father registry before the State could

file the paternity petition. As such, the court did not err when it denied Mother's motion for summary judgment on the ground that Putative Father had not registered with the putative father registry. We therefore affirm the trial court's denial of Mother's motion for summary judgment.[9]

## *Conclusion*

[31] In sum, we hold that Mother and Husband have failed to meet their burden on appeal to demonstrate that the court abused its discretion when it dismissed Husband as a party to the action. We further hold that Mother has failed to demonstrate that she was prejudiced by the trial court's failure to provide her with explicit notice of its intent to treat her motion to dismiss as a motion for summary judgment. And we hold that the State timely filed its paternity petition and that Putative Father was not required to register with the putative father registry before the State could file its petition. As such, the trial court did not err when it denied Mother's motion for summary judgment. We therefore affirm the trial court.

[32] Affirmed.

Kirsch, J., and Brown, J., concur.

---

[9] In her reply brief, Mother asserts that the court erred when it entered summary judgment in favor of Putative Father because there are disputed issues of material fact. *See* Reply Br. at 12. However, our review of the record indicates that the court did not enter summary judgment for Putative Father. Rather, following an evidentiary hearing, the court found by "clear and convincing evidence" that Putative Father is Child's father. Appellants' App. Vol. II at 11.